**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**LUIS JUSTO EUSEBIO RIJO
        Petitioner**

        **v.**

**UNITED STATES OF AMERICA
        Respondent**

**Civil No. 05-1503 (SEC)
[Related to Criminal No. 02-243 (PG)]**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

On May 11, 2005 Petitioner Luis Justo Eusebio-Rijo (hereafter "Rijo") filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255. Petitioner raises four grounds for relief.

In essence, Rijo asserts that: (1) trial counsel was ineffective inasmuch as, he failed to appeal the sentence imposed; (2) the government failed to meet the double intent requirement under 18 U.S.C. § 1956 (money laundering); (3) application of U.S.S.G. § 1.1(b) was unconstitutional and (4) that the sentencing court committed plain error in considering at sentencing, factors not admitted by him or determined by a jury. (**Docket No. 1**.)

The government opposed petitioner Rijo's request on July 27, 2005 (**Docket No. 9.**)

After considering petitioner's claim, the government's response and mainly, all evidence on record, it is RECOMMENDED that petitioner Rijo's motion for § 2255 relief be DENIED. The following analysis sets forth the grounds for the recommendation issued.

**I.     Procedural and Factual Background**

        **A.     In General**

Petitioner Luis Justo Eusebio-Rijo (hereafter "Rijo") was indicted by a Grand Jury and was charged in three (3) counts depicting his knowledgeable and willful participation in money laundering transactions. (**Docket Entry No. 9**.) Counts One and Two charged the petitioner with aiding and abetting, to knowingly and willfully conduct

or attempt to conduct a financial transaction affecting interstate or foreign commerce. It is alleged that petitioner participated in the laundering and delivery of monetary instruments in the amount of one hundred thirty- three thousand and thirty-three dollars ($133,033) and two hundred forty-nine thousand and eight hundred and ten dollars ($249,810), respectively, which represented the proceeds of an unlawful activity, that is, proceeds resulting from the importation, sale and otherwise dealing in narcotics or other dangerous drugs as defined in Title 21, United States Code. The time frame during which the illegal conduct took place, as alleged by the government, was from on or about October 16, 2002 to on or about October 24, 2002 and from on or about October 30, 2002 to on or about November 1, 2002.  It was further alleged that petitioner Rijo knew the transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of said specified unlawful activity: all in violation of Title 18, U.S.C., § 1956(a)(1)(B)(i)(ii) and 2.

Count Three of the Indictment provided for the forfeiture allegations pursuant to 18 U.S.C. § 928(b) and Title 21 U.S.C. § 835(p).

On February 18, 2004, petitioner pleaded guilty to Counts One and Two of the Indictment. The plea agreement entered into by the parties provided that at the time of sentence the government would request the court to dismiss Count Three of the Indictment. The plea agreement also contained a Sentencing Guideline calculation that yielded an Adjusted Offense Level (AOL) of 25. Based on this and a Criminal History Category (CHC) of I; the guideline imprisonment provided for a sentence between 57 and 71 months. The government was to recommend a sentence at the lower end of the applicable guideline range. Petitioner was sentenced by the District Court on November 10, 2004 to a term of imprisonment of fifty-seven (57) months, a supervised release term of three (3) years and a special monetary assessment of two hundred dollars ($200). The judgment and sentence were not appealed. On May 11, 2005 a motion was filed by the

Petitioner under 28 U.S.C. § 2255 to vacate sentence by a person in federal custody (**Docket No. 1**).

### B.     Petitioner's Claims

On this motion the petitioner alleges that his constitutional rights guaranteed by the Fifth, Sixth and Fourteenth Amendments were violated and he raises for (4) grounds upon which he intends to obtain relief.  In Ground One (1) petitioner Rijo claims that he received ineffective assistance of trial counsel based on the fact that his attorney did not filed a Notice of Appeal and did not appeal petitioner's sentence; a right guaranteed by the Fifth Amendment of the United States Constitution.  Petitioner also alleges that due to the attorney's negligence, the time allotted to file the appeal had expired, thus forcing the petitioner to rely on 28 U.S.C. § 2255 as his only option to appeal or have his sentence reviewed.

In Ground Two (2) petitioner Rijo claims that the government failed to meet the double intent requirement of 18 U.S.C. § 1956(a)(1)(B)(I) which requires that it be proven that the funds in the transaction were designed in whole or in part to conceal the nature, location, source, ownership, or control of the proceeds of such unlawful activity and that the defendant knew that the proceeds involved where those of an unlawful activity. Meanwhile, on Ground Three (3) petitioner alleges that the application of U.S.S.G. Section 1.1.(b)(1)(1) to his case is unconstitutional based on the United States Supreme Court ruling in the case of *Blakely v. Washington*, 542 U.S. 296 (2004).  According to Rijo the term of his sentence could only be enhanced if the facts considered to support said enhancement were found by a jury to be true beyond reasonable doubt.  As such, petitioner contends that his Sixth Amendment rights were violated. Finally, it is alleged that the district court committed "plain error" by supposedly increasing the petitioner's sentence based on facts not admitted by him or determined by a jury beyond reasonable doubt and that the error committed by the trial judge was prejudicial to the point of affecting his substantial rights.

The government opposed and responded to petitioner's motion on July 29, 2005 (**Docket No. 8**)[1].

### C.  Government's Contentions

In its response, the government argues that all of the petitioner's claims are without merit and should be denied.  (**Docket No. 9.**)  With regards to Ground One (1) (failure to appeal) of the petitioner's motion, the government claims that Rijo never asked his counsel that an appeal be filed, that the parties had previously stipulated to applicable adjustments and departures within the plea agreement, that the petitioner was properly sentenced, that the transcripts from the change of plea hearing shows that the petitioner acknowledged that the parties had agreed to the applicable sentencing guidelines by means of a stipulation and that at sentencing, the court advised petitioner of his right to appeal the judgment and gave him the opportunity to have the clerk file a notice of appeal on his behalf and petitioner failed to avail himself of such mechanism. The government asserts that the allegations made by the defendant about his legal representation do not meet the legal standard that will enable him to prevail on a claim of ineffective assistance of counsel.

In responding to petitioner's allegation regarding the lack of evidence to establish the double intent requirement of the offense charged, the government contends that by entering a valid guilty plea, admitting to all the elements of the offense charged and by agreeing to know about the commission of the underlying crime, Rijo admitted to each of the elements of the offense charged.  The government points to the record at the change of plea hearing (Rule 11 proceedings) to show that the petitioner understood the charges against him, voluntarily chose to plead guilty and that he understood the applicable maximum and minimum statutory penalties.

---

[1] From June 3, 2005 through July 29, 2005 the government moved for extensions of time in which to respond.  (**Docket Nos. 2, 5, 6-8**).

Case 3:05-cv-01503-SEC   Document 12   Filed 03/10/06   Page 5 of 17

Civil No. 05-1503(SEC) [Related to Criminal No. 03-236(SEC)]                                    Page 5

The government responds to petitioner's claims under the doctrine of *Blakely v. Washington*, 542 U.S. 296 (2004); by asserting that its holding does not apply to this case since petitioner's admissions before the court, do support the sentencing adjustment applied by the sentencing court.  More so, the government asserts that the plea agreement contained a stipulation regarding the guideline computations applicable at sentencing,  which were adopted by the court.  In view that sentence was imposed in accordance with the terms and conditions that petitioner Rijo stipulated to, the government argues that petitioner waived his rights and may not now complain of errors at sentencing.

### D.    Petitioner's Reply

Petitioner filed a motion in opposition to the government's response on August 19, 2005 (**Docket No. 10**.)  In regards to the ineffective assistance of counsel claim, the petitioner now claims that his counsel was deficient based on the fact that he failed to consult his client or whether he wanted to file an appeal.  Rijo argues that under the Sixth Amendment and  Supreme Court precedent, his attorney had the obligation to file an appeal and that this was his responsibility and not the petitioner's, nor that of the Clerk of Court.  In regards to his guilty plea, Rijo asserts that he did not pled guilty and did not stipulate to an enhancement above the base offense level of 8 and that this was a constructive and unconstitutional amendment to the indictment.  Rijo argues that his mere acquiescence to the prosecutor's charges or evidence is not enough to alter the substance of the indictment, which only a jury could do.

According to petitioner, his stipulation to the terms and conditions within the plea agreement did not constitute a stipulation for an enhancement under the *U.S.S.G. Section 1B1.2*, since he never agreed to it and he was not advised by the court that he had the right to have a jury determine beyond a reasonable doubt any applicable sentencing enhancement.  Based on this, petitioner contends that his waiver was neither knowing or intelligent as required by Rule 11.

Finally Rijo reaffirms that the district court committed plain error by imposing a sentence that exceeded the "authorized maximum". Petitioner argues that the only proven facts of the case established a base offense level of 8, but that the court unfairly sentenced him based on an adjusted offense level of 25. Rijo finally asserts that this resulted in a deprivation of his substantial rights since the length of his incarceration increased as a result of this.

## II. Analysis

### A. Legal Standard

Pursuant to 28 U.S.C. § 2255 there are four grounds upon which a federal prisoner may base a claim for relief: these are, that 1) the sentence was imposed in violation of the Constitution or laws of the United States; 2) the court was without jurisdiction to impose such sentence; 3) the sentence was in excess of the maximum authorized by law; and, 4) that the sentence is otherwise subject to collateral attack. A federal prisoner may claim "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . ." 28 U.S.C. §2255. However, such a petition may be summarily denied where it contains mere bald assertions without specific factual allegations. *Barrett v. United States*, 965 F.2d 1184, 1186 (1st Cir. 1992). In addition, even a facially adequate petition may be denied without a hearing where the alleged facts are conclusively refuted by the files and records of the case. *Id.*; *accord, Lema v. United States*, 987 F.2d 48, 51-52 (1st Cir. 1993).

Once sentence has been imposed, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255. *United States v. Noriega-Millán*, 110 F.3d 162, 166 (1st Cir. 1997). This is why "a defendant does not enjoy an absolute right to withdraw a plea of guilty, once it has been entered". *United States v. Miranda-Santiago*, 96 F.3d 517, 522 (1st Cir. 1996) (*citing United States v. Isom*, 85 F.3d 831, 834 (1st Cir. 1996)). A defendant, who never sought to withdraw his plea before the district court and challenges it for the first

time on collateral attack under a § 2255 motion, bears a high hurdle. The defendant must come forward with sufficient evidence to demonstrate "a fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962).

### B.    Period of Limitation

In evaluating a motion attacking a sentence under 28 U.S.C. § 2255, the court has to determine whether this was filed within "a one-year time limitation that generally runs from the date on which the judgment of conviction becomes final". *Clay v. United States*, 537 U.S. 522, 525 (2003). The one year limitation period can also start to run from "...(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255.

In this case petitioner Rijo was sentenced on November 10, 2004 and his motion requesting to be released under § 2255 was filed on May 11, 2005. Accordingly, it is clear that Rijo's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 was submitted to the court well within the one year limitation period. Thus, we proceed to consider whether petitioner's arguments are valid and whether he is entitled to the relief sought.

### C.    Ineffective Assistance of Counsel

The petitioner argues that he received ineffective assistance from his trial counsel based on the fact that he was not consulted by the latter on whether petitioner wanted to pursue an appeal.

The Sixth Amendment of the United States Constitution states that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an

impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense". "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 558, 692-693 (1985).

To prevail, petitioner must meet two prongs when arguing that his counsel's assistance was ineffective. First, he has to show that counsel made errors so serious that it made the counsel's performance deficient in light of the Sixth Amendment requirements. Second, he has to show that this deficient assistance deprived the defendant of a fair trial. *Strickland*, 466 U.S. at 687 (1985).

The record in this case shows that the petitioner was advised by the court of his right to appeal at both, the change of plea hearing (**Docket No. 58**: COP Tr. P. 9) and at the sentencing hearing (**Docket No. 59**: Sentencing Tr. p. 13). At the Change of Plea Hearing petitioner was advised and acknowledged that by entering into the plea agreement, he might have waived his right to appeal or collaterally attack all or part of his sentence. (**Docket No. 58** at p. 9-10). At the sentencing stage, similarly, the court advised petitioner Rijo as follows:

> **THE COURT:** Sir, you can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary or if there is some other fundamental defect in the proceedings that was not waived by your guilty plea. You also have the statutory right to appeal your sentence under certain circumstance particularly if you think that the sentence is contrary to law. With few exceptions any notice of appeal must be filed within ten days of judgment being entered in your case. If you are unable to pay the cost of appeal, you may apply for leave to appeal in forma

>pauperis. If you so request, the Clerk of the Court will prepare and file a notice of appeal on your behalf.

*Id* at **Docket No. 59**, p. 13

The record is void of evidence or indication that the petitioner ever requested from trial counsel or the Clerk of Court to file a notice of appeal on his behalf. What does appear on record is a written assertion by petitioner's counsel in which it is reflected that Rijo never expressed his wish to have an appeal filed on his behalf and never requested counsel to do so. (**Docket No. 59**: Attachment.)

There is no proof that there were any serious errors made that could be considered as ineffective assistance of counsel. In open court Rijo stated he understood his right to appeal if he believed that there was something unlawful or unjust about his plea agreement. Trial counsel assures that he was never told by petitioner of his desire to file an appeal. Counsel further stated that since Rijo had been sentenced in accordance to the stipulations he had entered into with the government he had no obligation to challenge on appeal the judgment petitioner had stipulated to. The petitioner knew about his right to appeal and having not said anything to his attorney at that time, he cannot now argue, at hindsight; that his Sixth Amendment rights were violated. More so, as discussed below, there were no procedural or substantive deficiencies in the conviction or sentencing procedures.

**D.     Government's Failure to Prove the Element of the Offense**

In his motion under 28 U.S.C. § 2255, petitioner argues that the government had not proven the elements of the crime charged. Once the government responded that defendant by pleading guilty had admitted to all elements of the crime charged, petitioner then changed his argument and now asserts that he was not advised by the court of his right to a jury determination, beyond a reasonable doubt, on all applicable sentencing enhancements and thus, his admission of the facts as proffered by the government did not constitute a knowing and intelligent waiver of constitutional rights.

It is a clearly settled principle that "a plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). A plea agreement once filed and acknowledged by a defendant is an admission that the defendant committed the crime charged against him and is admitting his guilt. *United States v. Broce*, 488 U.S. 563, 571 (1989). In his response to the government's motion, petitioner contends that he never stipulated to a 12 points enhancement to the base offense level. Unfortunately for him, the record shows that pursuant to the terms of the plea agreement, the parties had stipulated to a total offense level of 25 which provided for enhancements based on the value of the laundered funds  (+12 points); for his knowledge or believe that the funds were the proceeds or were intended to promote a drug offense (+6 points), and due to the fact that the conviction was under 18 U.S.C. § 1956 (+2 points). (**Docket 59** at p.7.) The adjusted offense level of 25 to which petitioner stipulated, clearly included the addition of 12 points corresponding to the value of the laundered funds. Specifically, Section 2S1.1.(a)(2) of the United States Sentencing Guidelines which deals with the laundering of monetary instruments states that the base offense level score for this crime is "8 plus the number of offense levels from the table in Section 2B1.1 corresponding to the value of the laundered funds or otherwise." U.S.S.G. Section 2S1.1.(a)(2). In this case, for purposes of the plea agreement there was a stipulation reflecting that Rijo was liable for laundering more than $200,000 but less than $400,000. Thus, in accordance to U.S.S.G. Section 2B1.1.(b)(1)(G), if the loss exceeds more than $200,000 but is less than $400,000; the base offense level should be increased by 12 points. The petitioner accepted those terms and said so at the change of plea hearing when asked, under oath; by the court. The colloquy at the Fed. R. Crim. P., Rule 11 hearing went as follows:

| | |
|---|---|
| **THE COURT:** | Mr. Eusebio, and counsel, you have heard the government give a summary, more than a summary I think of the plea agreement, is that correct? |
| **MS. RIOS (ATTORNEY):** | That is correct, Your Honor. |
| **THE DEFENDANT:** | Yes, sir, it is correct. |
| **THE COURT:** | Sir, did you have the opportunity to read and discuss the plea agreement with your counsel before you signed it? |
| **THE DEFENDANT:** | Yes, Your Honor. |
| **THE COURT:** | Do you understand the terms of the plea agreement? |
| **THE DEFENDANT:** | Yes, sir. |
| **THE COURT:** | Counsel have you explained this agreement to the defendant in Spanish and are you satisfied that he understands it? |
| **MS. RIOS:** | Yes, Your Honor, Mr. Ortiz and I discussed it with our client and we understand that he understood our explanation and also the translation and he is aware of the content of it. |
| **THE COURT:** | Mr. Eusebio, does the plea agreement represent in its entirety all of your understandings with the government? |
| **THE DEFENDANT:** | Yes, sir. |
| **THE COURT:** | Do you understand that the terms of the plea agreement are merely recommendations of the court and that I can reject the recommendations without permitting you to withdraw your plea of guilty, and impose a sentence that is more severe than you may anticipate? |
| **THE DEFENDANT:** | Yes, sir |

(**Docket No. 58**:  COP tr. pp. 8-9)

In this case the prosecutor's proffer of the amount of funds laundered was based on what was already stipulated by the parties and charged within Counts I and II of the

indictment. Rijo may not now asserts that the government's assertion regarding the amount of funds laundered was unknown to him. At the change of plea hearing, in this regards the trial court through the prosecutor's summary of the plea, advised Rijo as follows:

> **THE COURT:** by entering a plea of guilty, if that plea is accepted by the court, there will be no trial and you will have waived or given up your right to a trial as well...
>
> **AUSA HERNANDEZ:** It indicates that the defendant has agreed to plead guilty to counts 1 and 2 of the indictment. Count 1 charges that from on or about October 16, 2002 to on or about October 24, 2002, in the District of Puerto Rico and within jurisdiction of this court aiding and abetting to knowingly and willfully conduct or attempt to conduct a financial transaction affecting interstate or foreign commerce. That is to deliver monetary instruments in the amount of $130,033.00 in United States currency which represented the proceeds of specified unlawful activity, that is proceeds from the product of the importation, sale and otherwise dealing in narcotics or other dangerous drugs, knowing that such transactions was designed in whole or part to conceal or disguise the nature, location, source, ownership or control of the proceeds of said specified unlawful activity in violation of title 18, U.S.C. section 1956 and section 2.
>
> Count 2 charges the defendant with from on or about October 30, 2002 to November 1, 2002, knowingly and willfully conducting or attempting to conduct a financial transaction by delivering $249,810.00 in United States currency...

(**Docket No. 58**: COP Tr. Pp. 5-6)

More so, later on, while specifically advising Rijo of the nature and contents of Counts I and II, the court stated:

> **THE COURT:** Let me inform you that if the case went to trial **the government would have to prove to a jury beyond a reasonable doubt** with

>regard to Count 1, from on or about October 16, 2002 to on or about October 24, 2002, and with regard to Count 2, from on or about October 30, 2002 to on or about November 1, 2002, specifically with regard to count 1, that you, aiding and abetting with other defendants knowingly and willfully conducted or attempted to conduct a financial transaction affecting interstate or foreign commerce, that is to deliver monetary instruments in the amount of $130,033.00 which represented the proceeds of a specified unlawful activity, specifically proceeds product of the importation, sale and otherwise dealing in narcotics or other dangerous drugs, while knowing that the transactions were designed in whole or part to conceal or disguise the nature, location, source, ownership or control of the proceeds of said specified unlawful activity, in violation of the statute that I have cited (emphasis added.)
>
>**With regard to Count 2, the government would have to prove the same thing to a jury for you to be found guilty**, except that the transactions took place from on or about October 30, 2002, to on or about November 1, 2002, and that amount involved in the monetary instruments was $249,810.00, which also represented the proceeds of specified unlawful activity. In this case, proceeds product of the importation, sale or otherwise dealings in the sale of narcotics or dangerous drugs and also knowing that the transactions was designed in whole or part to conceal the nature, location, source, ownership or control of the proceeds of said unlawful activity. In violation of the statues that I just cited. Do you understand what I have just stated? (emphasis added.)

**THE DEFENDANT:**   Yes, sir.

(**Docket No. 58**: COP Tr. Pp. 10-12)

The record reflects that the court thoroughly examined petitioner regarding the nature and contents of each count filed against him and the required underlying knowledge of the facts that the proceeds were illegally obtain, that were drug related

funds and the fact that the transactions were geared to conceal or disguise the source of such illegal proceeds. Rijo clearly admitted to knowing and understanding all elements required. Upon assessing the voluntariness of his guilty plea, the court, at sentencing, accepted the parties stipulations within the plea agreement and sentenced petitioner accordingly.

Having reviewed the trial record in its entirety, there is no doubt that the court clearly adhered to the procedural requirements of Fed. R. Crim. P., Rule 11 and clearly warned Rijo of all the factors that were to be proven to a jury. Defendant, under oath, admitted to all elements of the offenses charged and stipulations within the plea agreement.

Based on the evidence on record, the change of plea colloquy, contents of the plea agreement and applicable case law, defendant's claims fails.

**D.** *Blakely v. Washington* **Claim**

On his § 2255 petition, Rijo argues that based on the holdings in *Blakely v. Washington*, Supra, and *Apprendi v. New Jersey*, 530 U.S. 466 (200), the application of U.S.S.G. 1.1.(b)(1)(I) is unconstitutional.

The petitioner's assertion regarding the applicability of either *Apprendi* or *Blakely* is erroneous. It is true that *Blakely v. Washington* was decided on June 24, 2004, this is approximately five months before petitioner's sentence on November 10, 2004. But neither *Blakely* nor *Apprendi* helps the petitioner's case. The basic rule of *Apprendi* is that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). According to *Apprendi*, the "statutory maximum" in this context is the maximum sentence a judge can impose without any additional findings and based solely on the facts reflected in the jury verdict or admitted by the defendant. *Apprendi*, 530 U.S. 466, 483. In this case, the possible maximum statutory sentence was that of 20 years of imprisonment. The record

reflects that the sentencing court did not impose the maximum possible sentence, nor did the court exceed it. The record reflects that defendant Rijo clearly admitted to the offense charged and the underlying factor of knowing about the illegal source of the proceeds. Thus, under *Blakely*, there needs to be no jury finding as to elements or facts readily admitted by the defendant.

When a defendant pleads guilty, the government can pursue sentence enhancements as long as that defendant has stipulated to the relevant facts or consents to judicial fact finding and if the appropriate waivers are obtained by the government, a prosecutor can continue to offer judicial fact findings as a matter or course. *Blakely*, 542 U.S. 296, 419 (2004). The record in this case clearly shows that the facts used by the District Court to make its determination regarding sentencing adjustments, were supported by the government's allegations within the indictment; the written stipulation of Rijo within the plea agreement and Rijo's admissions before the Court. It is undeniable that Rijo stipulated and admitted to every element of the offense charged, the total quantity of funds laundered; its source and intended purpose of the monetary transactions in which he participated.

In this regards, the government's evidence, as outlined during the Rule 11 proceedings, establishes that defendant had made two deliveries of monetary instruments that totaled $379,843, that this money represented the proceeds of the sale of drugs, that petitioner knew that this transaction took place in order to launder those funds and that he believed that the man that received the money was a broker that was capable of laundering those proceeds through the legal financial community. (**Docket No. 58**: COP Tr. Pp. 5-9.)

The record shows that the sentence imposed by the District Judge was based solely on the facts that were admitted and stipulated by the defendant on the plea agreement (**Docket No. 59**: Sentencing Tr. 9-11). There were no other facts used to reach that decision and Rijo was sentenced to the lower end of the guideline range as was

recommended by both the defense and the government. In this case, contrary to defendant's actions in *Blakely*; the petitioner clearly admitted the underlying facts used by the Judge to determine the applicable sentencing adjustments and sentences. Thus, there was no need for a jury to intervene and decide whether those facts were indeed proven beyond a reasonable doubt.

As to the petitioner's final argument, it seems clear that no "plain error" was committed by the trial court in this case, since it sentence was based on the facts admitted to by the petitioner. There was no deviation from the doctrine in *Apprendi* and *Blakely* and it seems clear from the record that the petitioner admitted the facts used to determine the length of his sentence. More so, petitioner was sentenced within the applicable sentencing guideline range.

A "plain error" occurs when there is an error, that error is plain, it affects substantial rights and seriously impairs the fairness, integrity or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725 (1993). In the case at bar, there is no "plain error".

### III. Conclusion

Based on the foregoing analysis, **IT IS RECOMMENDED** that the motion for relief under 28 U.S.C. § 2255 (**Docket No. 1**) be **DENIED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court. Any objections to the same must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980). The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing

and does not permit consideration of issues not raised before the Magistrate-Judge. *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**SO RECOMMENDED.**

At San Juan, Puerto Rico, this 9th day of March, 2006.


							S/**AIDA M. DELGADO-COLON**
							**U.S. Magistrate-Judge**